## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## NORTHEASTERN DIVISION AT GREENEVILLE

| | |
|---|---|
| CHRISTOPHER L. STURGILL,<br><br>    Plaintiff,<br><br>v.<br><br>THE CITY OF KINGSPORT, TENNESSEE;<br>ROBERT MILLS; and<br>EMILY RHOTON,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)   Case No. _____<br>)        JURY DEMANDED<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

---

## COMPLAINT

---

Plaintiff, Christopher L. Sturgill, through counsel, and for cause of action against these Defendants, respectfully states as follows:

### INTRODUCTION

This is a civil rights, personal injury, and common law tort action arising from the acts, omissions, policies, practices, and culture of the City of Kingsport, Tennessee; the Kingsport Police Department; Kingsport Police Detective Robert Mills; and Kingsport Police Officer Emily Rhoton regarding the seizure, arrest and post-arrest treatment of Christopher L. Sturgill on February 5th, 2023.

Mr. Sturgill's claims under 42 U.S.C. § 1983 arise from the Defendants' violation of Mr. Sturgill's clearly established rights, guaranteed to him under the United States Constitution, including unlawful seizure and excessive force. In the alternative, Mr.

Sturgill's claims under the Tennessee Government Liability Act § 29-20-205 arise from the negligent conduct of the Defendants which caused severe and significant harm to Mr. Sturgill.

## I.      PARTIES

1.      Plaintiff, Christopher L. Sturgill, is an adult citizen of the United States and the State of Tennessee. Mr. Sturgill resides at 686 Rock Springs Dr, Kingsport, Tennessee 37664.

2.      The Plaintiff sues the Defendants for all damages recoverable under state and federal law.

3.      Defendant City of Kingsport, Tennessee, is a governmental entity created under the laws of the State of Tennessee. Among its other functions, the Defendant operates and maintains a law enforcement agency, the Kingsport Police Department ("KPD"). Defendant City of Kingsport is responsible for ensuring the establishment and enforcement of rules, regulations, policies, practices, procedures, and customs for the Kingsport Police Department. The City of Kingsport does not have immunity for violating any person's civil rights. The City of Kingsport is liable for its own conduct and the acts and omissions of its elected officials, employees, agents, and contractors, including the Defendants Emily Rhoton and Robert Mills. Defendant City of Kingsport was, at all times material to this suit, under a duty to operate its policing activities in a lawful manner so as to preserve the peace of the City of Kingsport and to preserve its citizens the rights, privileges, and immunities guaranteed and secured to them by the Constitution and the laws of the United States. Further, Defendants are not immune from liability for negligent acts pursuant to Tennessee's Government Liability Act.

2

4. KPD is an agent of the City of Kingsport.

5. Defendant KPD Detective Robert Mills ("Detective Mills") is a member of KPD and was at all times relevant to this suit.

6. Defendant KPD Officer Emily Rhoton ("Officer Rhoton") is a member of KPD and was at all times relevant to this suit.

## II.   JURISDICTION AND VENUE

7. This cause of action arises out of a series of events, all of which occurred in Sullivan County, Tennessee.

8. Venue lies with this court pursuant to 28 U.S.C. § 1391, as all the acts or omissions which give rise to this cause of action occurred within this district, and based on information and belief, all of the Defendants are residents of and/or conduct business in this district. Jurisdiction lies with this Court pursuant to federal question jurisdiction, 28 U.S.C. §§ 1331 and 1343, based on the claims brought under 42 U.S.C. § 1983 and the Fourth Amendment of the Constitution of the United States of America.

9. This Court may exercise supplemental jurisdiction of Tennessee's Government Tort Liability Act claims pursuant to 28 U.S.C. § 1367, because the state claims are so related to the federal claims that they form part of the same case or controversy.

10. Each and every act of Defendants was performed under the color of state law and by virtue of the constitutions, statutes, ordinances, regulations, policies, customs and usages of the United States of America, the State of Tennessee, the County of Sullivan, and the City of Kingsport, and under the authority of their positions as law enforcement officers for the City of Kingsport.

3

11.     All the wrongs complained of herein occurred within this jurisdiction and within the applicable statute of limitations governing this action and this Court has jurisdiction.

## III.     FACTUAL BACKGROUND

12.     Mr. Sturgill is a 41-year-old teacher, track coach, and head coach of the football team at Sullivan Heights Middle School.

13.     Mr. Sturgill is a cancer survivor.

14.     Mr. Sturgill is a well-known, visible, and active member of the Sullivan County Community.

15.     Mr. Sturgill can be easily found on the internet by typing his name as well as "Kingsport, TN," "Sullivan County," or "football coach."

16.     An internet search for Mr. Sturgill would include multiple pictures of him.

17.     Mr. Sturgill was featured in the Kingsport Times-News.

18.     Mr. Sturgill does not have a criminal history.

19.     Mr. Sturgill worked diligently throughout his life to be a great teacher and coach.

20.     Mr. Sturgill highly values his role as an educator and coach.

21.     Mr. Sturgill received several awards for his coaching and teaching abilities including several coach-of-the-year awards as a softball coach, track head coach, head football coach, and assistant football coach.

22.     Mr. Sturgill regularly scores in the top 25% of teachers in student evaluations and receives praise from parents of children he coaches.

4

23. For seven years, Mr. Sturgill was selected to mentor student teachers from local colleges.

24. Since 2005, Mr. Sturgill has taught physical education and weightlifting in Kingsport, Tennessee.

25. On or about September 14, 2022, Officer Mills signed an affidavit that stated:

> On 6/22/22, Jason Smith reported that he was at Model City Motel and his 2001 Ford Ranger (Tn tag#956BDVQ) was stolen. Mr. Smith reports that he and his acquaintance, Christopher Sturgill, were staying in room #25. Mr. Smith states that he got in the shower and left Mr. Sturgill in the room and when he was finished showering, he found that Mr. Sturgill and his truck was missing. Mr. Smith advised that he never gave Mr. Sturgill permission to take his truck. Due to these facts, I am charging Mr. Sturgill with Motor Vehicle theft over $1000.00. This occurred in Kingsport, Sullivan County Tennessee.

26. Based on the affidavit signed by Officer Mills, an arrest warrant was issued against Christopher Sturgill for Theft of Property (Motor Vehicles) pursuant to Tennessee Code Annotated § 39-14-103.

27. Officer Mills did nothing to confirm that the Chris Sturgill, who allegedly committed a low-level felony theft, was the same Chris Sturgill that was arrested, at gunpoint, by twelve (12) officers on February 5, 2023.

28. KPD officers did not ask Jason Smith to provide any identifying information about the Chris Sturgill that allegedly committed theft from an "acquaintance."

29. KPD officers did not request a picture of Chris Sturgill from Jason Smith, confirm with Jason Smith what Chris Sturgill looked like, or show Jason Smith a picture of Mr. Sturgill.

30. KPD officers did not and/or do not have a policy or sufficient training to investigate, research, or identify suspects.

31. KPD officers did not and/or do not have a policy or training to investigate, research, or identify individuals who have warrants for their arrests.

32. KPD officers did not and/or do not have a policy or training in place to assure case investigation is of an acceptable standard.

33. After this incident, KPD did not implement a policy or sufficient training to properly research and identify persons of interests, nor did KPD implement policy or training to ensure the adequacy of their investigative work.

34. KPD failed to adequately investigate which Christopher Sturgill was wanted for the charge of theft of property.

35. KPD Officer Rhoton failed to properly research, run background checks, properly identify suspects, and carry out arrests without violating the rights of citizens to such a degree that she recklessly disregarded Mr. Sturgill's constitutional rights.

36. Alternatively, Officer Rhoton failed to properly research, run background checks, properly identify suspects, and carry out arrests without violating the rights of citizens to such a degree that she negligently disregarded Mr. Sturgill's constitutional rights.

6

37. KPD Detective Mills failed to properly research, run background checks, properly identify suspects, and carry out arrests without violating the rights of citizens to such a degree that she recklessly disregarded Mr. Sturgill's constitutional rights.

38. Alternatively, KPD Detective Mills failed to properly research, run background checks, properly identify suspects, and carry out arrests without violating the rights of citizens to such a degree that she negligently disregarded Mr. Sturgill's constitutional rights.

39. KPD Detective Mills failed to provide proper oversight and training of officers in conducting police work, including investigative techniques, research, background checks, proper identification of suspects, initiating arrests with the proper amount of force, and ensuring KPD training and adopted policies do not violate the rights of citizens.

40. Without just cause, without adequate police work, and with a reckless disregard for Mr. Sturgill's well-being, KPD, assisted by the Sullivan County Sheriff's Office, falsely arrested Mr. Sturgill on February 5, 2023.

41. More specifically, on a Sunday afternoon at around 12:30 pm, twelve (12) officers arrived at Mr. Sturgill's parents' home.

42. Mr. Sturgill moved in with his parents to help care for his mother with medical needs.

43. Mr. Sturgill was in the downstairs basement of his parent's house watching tv and spending time with his blind, 15-year-old dog.

44. Mr. Sturgill's father watched through the window as KPD vehicles approached the home and asked their purpose for being there.

7

45. The KPD officers told Mr. Sturgill's father that they had a warrant for Mr. Sturgill's arrest.

46. Mr. Sturgill's father told the officers that Mr. Sturgill was in the basement, and he would go get Mr. Sturgill.

47. The officers would not let Mr. Sturgill's father go downstairs to retrieve his son.

48. The door to Mr. Sturgill's room was locked, and Mr. Sturgill fell asleep while watching television.

49. Four armed officers kicked open the door to the basement.

50. Mr. Sturgill woke up in a confused state to officers' weapons and flashlights inches from his face.

51. Eight more police officers waited for him upstairs.

52. Mr. Sturgill's parents and 2-year-old niece were present at his parents' house.

53. Mr. Sturgill's niece watched a KPD officer handcuff Mr. Sturgill.

54. As the officers removed Mr. Sturgill from the residence in handcuffs, the scared niece asked why they were taking Uncle Chris away.

55. Mr. Sturgill's neighbors who had just returned home from church services that day saw the police arrest Mr. Sturgill and walk him out of his parents' home in handcuffs.

56. One of the officers on scene recognized Mr. Sturgill as the head football coach of Sullivan Heights Middle School.

8

57. Mr. Sturgill asked why he was being arrested and told the officers they had the wrong person.

58. Mr. Sturgill was taken into custody and transported to Kingsport City Jail.

59. While at the Kingston City Jail, Mr. Sturgill was forced to be naked in order to conduct an unnecessary inspection.

60. While naked, Mr. Sturgill was forced to squat and cough in front of officers.

61. After Mr. Sturgill squatted, while naked in front of others, an officer berated and threatened him by telling Mr. Sturgill that the officer knew he was hiding something "up there," and to squat and cough a second time.

62. Mr. Sturgill sat in the Kingsport Jail, for ten hours, as the only inmate with no socks.

63. Mr. Sturgill felt humiliated and treated as less than human while at the Kingsport Jail.

64. Mr. Sturgill posted bail for himself with no issue.

65. Mr. Sturgill was not provided the opportunity to seek bail and be booked prior to being forced to remove his clothing and humiliated by officers.

66. After waiting ten hours to be released and having posted his bail, Mr. Sturgill asked how much longer it would take and was informed that he was cleared for release five hours earlier.

67. The day after his release, Mr. Sturgill went to his job as a physical education teacher at Sullivan Heights Middle School.

68. However, the rumors about his arrest spread around the community and students repeatedly asked Mr. Sturgill if it was true that he had been arrested.

9

69. The students' questions about his arrest had a profound impact on Mr. Sturgill, and he could not continue teaching that day as a result of the shame and humiliation it caused.

70. On February 6, 2023, less than forty-eight (48) hours after his arrest, KPD uncovered the fact that Mr. Sturgill was not the suspect listed in the alleged theft of Mr. Smith's vehicle.

71. The charges against Mr. Sturgill were dismissed without terms on February 6, 2023.

72. Shortly after the arrest, Detective Mills apologized to Mr. Sturgill for the mistake he made in falsely arresting him.

73. KPD did not adequately address Detective Mills' mistake via training or the implementation of new policies.

74. Upon information and belief, Detective Mills made a similar mistake or multiple mistakes with respect to a suspect's identity before and after Mr. Sturgill's arrest and, after another similar incident following Mr. Sturgill's arrest, Officer Mills was demoted.

75. Mr. Sturgill suffered and continues to suffer from mental and emotional injuries caused by the unlawful arrest and excessive force applied by officers of KPD.

76. The arrest warrant against Chris Sturgill for Theft of a Motor Vehicle Over $1,000.00 did not warrant the force used to arrest Mr. Sturgill.

77. Theft of a motor vehicle does not support actions taken by law enforcement officers when a suspect may pose an immediate threat to the safety of the arresting officers or others.

78. The facts and circumstances did not require officers to kick in his door and arrest him at gunpoint.

79. The officers talked with the father of Mr. Sturgill before approaching Mr. Sturgill in the basement.

80. The officers were aware there was a toddler in the home when they initiated the arrest.

81. It was not objectively reasonable for the officers to deploy and point their firearms at Mr. Sturgill in the manner they did.

82. As a result of the unlawful arrest, Mr. Sturgill's mental state has steeply declined.

83. Mr. Sturgill developed memory problems, struggles immensely with the smallest of tasks, and cannot currently work at his job.

84. Loud noises debilitate and paralyze Mr. Sturgill.

85. Mr. Sturgill suffers from loss of enjoyment of life.

86. Mr. Sturgill feels guilt for no reason, feels like his career he worked so hard for and taken pride in is now ruined, and experiences irrational thoughts such that the world is ending.

87. Mr. Sturgill developed severe anxiety and depression as a result of being unlawfully arrested and subject to humiliation of his inspection at the Kingsport City Jail and the onset of Post-Traumatic Stress Disorder.

88. Post Traumatic Stress Disorder ("PTSD") is a disorder that develops in people who have experienced trauma and react with symptoms to the trauma including those experienced by Mr. Sturgill.

11

89.     Mr. Sturgill has not been able to continue to coach or teach consistently since his false arrest.

90.     Mr. Sturgill has not participated in normal daily activities since his false arrest.

91.     PTSD can develop at any age and symptoms last longer than a month.

92.     Symptoms of PTSD include flashbacks, distressing thoughts, staying away from places, events, or objects that are reminders of the experience, being easily startled, feeling tense or on edge, negative thoughts about oneself or the world, exaggerated feelings of blame directed toward oneself or others, ongoing negative emotions, such as fear, anger, guilt, or shame, feelings of social isolation, and more – all symptoms that apply to Mr. Sturgill.

93.     Rumors continue to circulate in the community that Sullivan Heights Middle School bailed Mr. Sturgill out and are now covering for him.

94.     As a result of the unlawful arrest and force applied by KPD officers, Mr. Sturgill suffered emotional and mental harm and he suffered anxiety and fear of the police when going about in public.

95.     As a result of the unlawful seizure and excessive force applied by officers of KPD, Mr. Sturgill was deprived of the value of his time while he was confined by the KPD.

96.     As a result of the unlawful arrest and force applied by officers of the KPD, Mr. Sturgill is entitled to reimbursement of the reasonable legal expenses he incurred for the legal services he was required to obtain to defend and attempt to clear himself.

## IV. CAUSES OF ACTION AGAINST DEFENDANTS UNDER 42 U.S.C.A. § 1983

### A. UNLAWFUL SEIZURE IN VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION

97. Plaintiff, Mr. Sturgill, hereby incorporates, in its entirety, each and every paragraph contained in this Complaint by reference as if fully set forth herein.

98. Mr. Sturgill was seized by Officer Rhoton and other, as yet unidentified, members of KPD.

99. Mr. Sturgill had not committed any violations of Tennessee law that would warrant his arrest.

100. KPD failed to perform any kind of investigation as to who the targeted defendant was.

101. It is not uncommon for two different people to share a first and last name.

102. KPD officers acted recklessly in failing to identify the correct Chris Sturgill, who was a person of interest to the police department.

103. There was no evidence or objective fact to warrant a law enforcement officer to believe that the Plaintiff Chris Sturgill had committed any criminal offenses nor was there probable cause to initiate his unlawful arrest.

104. KPD Officer Rhoton failed to effect the arrest of Mr. Sturgill without violating his rights to such a degree that she recklessly disregarded Mr. Sturgill's constitutional rights.

105. KPD Detective Mills failed to effect the arrest of Mr. Sturgill without violating his rights to such a degree that she recklessly disregarded Mr. Sturgill's constitutional rights.

106. As a result of his unlawful seizure by officers of KPD, Mr. Sturgill suffered a violation of his clearly established rights under the Fourth Amendment to the United States Constitution and Article I, § 7 of the Tennessee Constitution.

107. As a result of his unlawful seizure by officers of KPD, Mr. Sturgill suffered and continues to suffer from pain and mental injuries.

108. As a result of his unlawful seizure by officers of KPD, Mr. Sturgill incurred the cost of medical care and continues to require medical care.

109. As a result of his unlawful seizure by officers of the KPD, Mr. Sturgill suffered and continues to suffer from emotional and mental harm incurred during and after his unlawful seizure including fear, humiliation, mental anguish, and is reasonably certain to experience ongoing pain and suffering in this manner.

**B. EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION**

110. Plaintiff, Mr. Sturgill, hereby incorporates, in its entirety, each and every paragraph of this Complaint by reference as if fully set forth herein.

111. The Fourth Amendment to the United States Constitution protects people from being subjected to excessive force while being arrested or detained by the police.

112. The amount of force KPD officers used during the arrest of Mr. Sturgill far exceeded the amount of force a reasonable officer would have used under similar circumstances.

113. There was no indication that Mr. Sturgill was armed or posed a threat to officer safety or public safety in any way.

114. Mr. Sturgill did not resist arrest.

14

115. The physical force applied by KPD officers resulted in unnecessary injuries to Mr. Sturgill.

116. The physical force applied to Mr. Sturgill was applied intentionally by KPD officers.

117. The physical force used against Mr. Sturgill exceeded the force justified under any continuous use of force policy.

118. The actions of the officers of the Kingston Police Department in arresting Mr. Sturgill were objectively unreasonable in that excessive force was applied given the totality of the circumstances.

119. As a result of the excessive force applied by officers of KPD, Mr. Sturgill suffered a violation of his clearly established rights under the Fourth Amendment to the United States Constitution.

120. As a result of the excessive force applied by officers of KPD, Mr. Sturgill suffered and continues to suffer from pain and mental injuries.

121. As a result of the excessive force applied by officers of KPD, Mr. Sturgill incurred the cost of medical care and continues to require medical care.

122. As a result of the excessive force applied by officers of KPD, Mr. Sturgill suffered and continues to suffer from emotional and mental harm incurred during and after his unlawful seizure including fear, humiliation, mental anguish, and is reasonably certain to experience ongoing pain and suffering in this manner.

**C. THE CITY OF KINGSPORT'S POLICIES, INADEQUATE TRAINING AND INADEQUATE SUPERVISION OF POLICE OFFICERS CAUSED THE VIOLATION OF MR. STURGILL'S CONSTITUTIONAL RIGHTS**

123. Plaintiff, Mr. Sturgill, hereby incorporates, in its entirety, each and every paragraph of this Complaint as if fully set forth herein.

124. The City of Kingsport has a duty to adequately train and supervise its police officers in order to protect the rights of the persons with whom those officers interact.

125. The City of Kingsport has a duty to adequately train and supervise police officers so that they do not unlawfully seize or use excessive force on the persons with whom they interact.

126. The City of Kingsport has, or had at the time Mr. Sturgill's Fourth Amendment rights were violated, policies which failed to protect Mr. Sturgill from unlawful arrest.

127. The City of Kingsport has failed to adequately train and supervise officers regarding unlawful seizure and the use of excessive force.

128. The City of Kingsport has, or had at the time of Mr. Sturgill' Fourth Amendment rights were violated, policies which failed to adequately train and supervise officers regarding proper investigation and identification of suspects in a crime.

129. The City of Kingsport's failure to adequately train and supervise police officers in conducting research on a suspect's appearance, possible location, background information, including employment, or other identifying information to initiate and arrest on the correct suspect.

16

130. The failure of the City of Kingsport to adequately train and supervise police officers proximately caused the violation of Mr. Sturgill' well-established right to freedom from unlawful seizure and the use of excessive force under the Fourth Amendment.

131. It was foreseeable that the failure to train and supervise police officers would result in misidentification of a suspect.

132. It was foreseeable that the failure to train and supervise police officers would result in a false arrest.

133. It was foreseeable that the failure to train and supervise police officers would result in excessive force to conduct an arrest.

134. It was foreseeable that an unprovoked arrest of an innocent civilian would likely cause mental harm to the innocent civilian.

135. It was foreseeable that thrusting four guns in the face of Mr. Sturgill during his unlawful seizure would result in mental harm to Mr. Sturgill.

136. It was foreseeable that the false arrest would result in Mr. Sturgill's booking at the Kingsport City Jail.

137. KPD police officers and policymakers knew about poor jail conditions, understaffing, and extremely long booking and processing times at the Kingsport City Jail.

138. Policymakers for the City of Kingsport knew that police officers would encounter situations where they must decide whether to seize a person and the level of force that is appropriate while making seizures of persons.

139. The inability of officers to make appropriate decisions about whether to seize a person and the proper level of force to use when making such a seizure will certainly lead to the violation of rights under the Fourth Amendment.

140. As a result of the City of Kingsport's deliberate indifference, Mr. Sturgill's Fourth Amendment right to freedom from unlawful seizure and the use of excessive force was violated.

141. As a result of the City of Kingsport's deliberate indifference, Mr. Sturgill suffered damages including emotional and mental harm incurred during and after his unlawful seizure including fear, humiliation, mental anguish, and is reasonably certain to experience ongoing pain and suffering in this manner.

**D. THE CITY OF KINGSPORT'S POLICY OR CUSTOM OF USING EXCESSIVE FORCE WAS THE CAUSE OF AND THE MOVING FORCE BEHIND THE VIOLATION OF MR. STURGILL'S CONSTITUTIONAL RIGHTS**

106. Plaintiff, Mr. Sturgill, hereby incorporates, in its entirety, each and every paragraph of this Complaint as if fully set forth herein.

107. The City of Kingsport adopted an official policy of using excessive force to make arrests.

108. If not an official policy of the City of Kingsport, the custom of using excessive force to make arrests became so well-settled and permanent as to have the force of law.

109. If it is not an official policy of the City of Kingsport to encourage these aggressive police encounters, the City of Kingsport allowed this pattern of aggressive police encounters to continue and demonstrated municipal acquiescence to the custom.

110. It was reasonably foreseeable that the policy or custom of the City of Kingsport to use excessive force to make an arrest would lead to the violation of someone's constitutional rights, or in other words, the City of Kingston's policy or custom was the proximate cause of the violation of Mr. Sturgill' Fourth Amendment rights to

freedom from unlawful seizure and freedom from the use of excessive force during his arrest.

111. As a result of the City of Kingsport's policy or custom of using excessive force to make an arrest, Mr. Sturgill suffered damages including the violation of his constitutional rights, freedom from unlawful seizure, and freedom from the use of excessive force during his arrest.

112. As a result of the City of Kingsport's policy or custom, Mr. Sturgill suffered a violation of his clearly established rights under the Fourth Amendment to the United States Constitution.

113. As a result of the City of Kingsport's policy or custom, Mr. Sturgill suffered and continues to suffer from pain and mental injuries.

114. As a result of the City of Kingsport's policy or custom, Mr. Sturgill suffered and continues to suffer from emotional and mental harm incurred during and after his unlawful seizure including fear, humiliation, mental anguish, and is reasonably certain to experience ongoing pain and suffering in this manner.

## V. STATE LAW CLAIMS

Tennessee's Government Tort Liability Act removes the City of Kingsport's immunity from suit.

### A. NEGLIGENCE

106. Plaintiff, Mr. Sturgill, hereby incorporates, in its entirety, each and every paragraph of this Complaint as if fully set forth herein.

107. Based on the negligent acts of the City of Kingsport and its agents and employees, and pursuant to Tennessee Code Annotated § 29-20-205, immunity is removed from Defendants.

108. The City of Kingsport owed a duty to operate its policing activities in a lawful manner so as to preserve the peace of the City of Kingsport and to preserve to its citizens the rights, privileges, and immunities guaranteed and secured to them by the Tennessee Constitution and the laws of the State of Tennessee.

109. KPD Detective Mills owed a duty to carry out policework in a lawful manner so as to preserve the peace of the City of Kingsport and to preserve to its citizens the rights, privileges, and immunities guaranteed and secured to them by the Tennessee Constitution and the laws of the State of Tennessee.

110. Arresting KPD Officer Rhoton owed a duty to carry out policework in a lawful manner so as to preserve the peace of the City of Kingsport and to preserve to its citizens the rights, privileges, and immunities guaranteed and secured to them by the Tennessee Constitution and the laws of the State of Tennessee.

111. The City of Kingsport breached its duty when City of Kingsport employees failed to adequately research which Chris Sturgill had a warrant for his arrest.

112. The City of Kingsport breached its duty when City of Kingsport employees used excessive force to carry out the false arrest of Mr. Sturgill.

113. The use of excessive force by KPD officers was a substantial factor in and foreseeable cause of the injuries Mr. Sturgill suffered.

114. KPD Detective Mills breached his duty when he failed to provide training to KPD officers, failed to provide proper oversight of other KPD officers' work, failed to research, run a background check on, identify, and arrest the correct Chris Sturgill.

115. KPD Officer Rhoton breached her duty when she failed to research, run a background check on, identify, and arrest the correct Chris Sturgill.

116. It was foreseeable that the failure to train and supervise police officers would result in misidentification of a suspect.

117. It was foreseeable that the failure to train and supervise police officers would result in a false arrest.

118. It was foreseeable that the failure to train and supervise police officers would result in excessive force to conduct an arrest.

119. It was foreseeable that an unprovoked arrest of an innocent civilian would likely cause mental harm to the innocent civilian.

120. It was foreseeable that thrusting four guns in the face of Mr. Sturgill during his unlawful seizure would result in mental harm to Mr. Sturgill.

121. It was foreseeable that the false arrest would result in Mr. Sturgill's booking at the Kingsport City Jail.

122. The failure in researching and finding the correct Chris Sturgill wanted for arrest was reasonably foreseeable to lead to the injuries Mr. Sturgill suffered upon false arrest.

123. In the alternative, Mr. Sturgill would not have been injured absent City of Kingsport's negligence.

124. As a result, Mr. Sturgill suffered and continues to suffer from emotional and mental harm incurred during and after his unlawful seizure including fear, humiliation, mental anguish, and is reasonably certain to experience ongoing pain and suffering in this manner.

## V. DAMAGES

As a result of the aforementioned acts and omissions in violation of Mr. Sturgill's well-established rights under the Fourth Amendment to the United States Constitution and the Tennessee Constitution, the same being a direct and proximate cause of Mr. Sturgill' injuries and damages, Mr. Sturgill seeks recovery from the Defendants in the amount of not less than Seven Hundred Fifty Thousand Dollars ($750,000.00) for damages, including, but not limited to, the following:

    a. Physical pain and suffering;

    b. Emotional pain and suffering;

    c. Actual and future medical expenses;

    d. Loss of enjoyment of life;

    e. Loss of wages and earning capacity;

    f. Attorney fees;

    g. Punitive damages;

    h. All such further relief, general and specific, to which Mr. Sturgill may be entitled under the facts and circumstances herein.

## VI. PRAYERS FOR RELIEF

WHEREFORE, PREMISES CONSIDERED:

Mr. Sturgill sues Defendants, jointly and severally, individually and in their official capacity, and prays for a judgment against the Defendants for nominal, compensatory, and punitive damages in the maximum amount allowed by law and for such further general and specific damages, statutory and discretionary costs, post-judgment interest, and such further relief as the Court may find Mr. Sturgill to be entitled.

Respectfully submitted this 2nd day of February, 2024.

/s/ Nathaniel H. Evans
NATHANIEL H. EVANS (BPR # 026292)
THE EVANS LAW FIRM
625 Market Street, Suite 404
Knoxville, Tennessee 37902
(865) 523-2755
nate@evanslawfirm.law